Filed 10/28/14  P. v. Pantoja CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHN EDWARD PANTOJA,<br><br>    Defendant and Appellant. | D065011<br><br><br><br>(Super. Ct. No. SCS260141) |

APPEAL from a judgment of the Superior Court of San Diego County, Ana L. Espana, Judge.  Affirmed.

Siri Shetty, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

This case arose out of a multi-victim armed robbery that John Edward Pantoja, a transient, committed in October 2012 at a CVS store in Chula Vista, California, while on drugs and on probation.  A jury convicted Pantoja of assault with a firearm upon a peace

officer (count 2: Pen. Code.,[1] § 245, subd. (d)(1)) and two counts of robbery (counts 3 & 4 (victims: Rocio Pale & Fred Fargo, respectively): § 211), and found true as to counts 3 and 4 an allegation that he personally used a firearm (a semiautomatic handgun) in committing each robbery within the meaning of section 12022.53, subdivision (b) (hereafter referred to as section 12022.53(b)). As to the count 4 robbery, the jury also found to be true an allegation that Pantoja's victim (Fargo) was a person 65 years of age or older, but found to be not true an allegation that he knew or reasonably should have known Fargo's age (§ 667.9, subd. (a)). The jury found Pantoja not guilty of attempting to murder a peace officer (§§ 664, subd. (e)(1), 187, subd. (a)) as charged in count 1 of the information.

At the initial sentencing hearing held on November 21, 2013, the court sentenced Pantoja to an aggregate state prison term of 19 years four months, consisting of (1) the upper term of five years for his count 3 robbery conviction, plus (2) a consecutive term of 10 years for the count 3 personal-use-of-a-firearm enhancement, which the court mistakenly believed was an enhancement under section 12022.5 (when, as noted, it was an enhancement under § 12022.53(b)); plus (3) a consecutive term of two years (one-third of the middle term of six years) for the count 2 conviction of assault with a firearm upon a peace officer; plus (4) a consecutive term of one year (one-third the middle term of three years) for the count 4 robbery conviction; plus (5) a consecutive term of one year four months (one-third the middle term of four years) for the count 4 personal-use-of-a-

---

1      All further statutory reference are to the Penal Code.

firearm enhancement, which the court also mistakenly believed was an enhancement under section 12022.5 (when, as also noted, it was an enhancement under section 12022.53(b)).

The following day, after notifying the parties, the court conducted another hearing—at which the prosecutor, Pantoja, and Pantoja's counsel appeared—to correct its sentencing errors, which the court found had resulted in an unauthorized sentence. Defense counsel agreed the court needed to correct the unlawful sentence. The court sentenced Pantoja to an aggregate state prison term of 21 years four months, consisting of (1) the upper term of five years for his count 3 robbery conviction, plus (2) a consecutive term of 10 years for the count 3 personal-use-of-a-firearm enhancement (§ 12022.53(b)); plus (3) a consecutive term of two years (one-third of the middle term of six years) for the count 2 conviction of assault with a firearm upon a peace officer; plus (4) a consecutive term of one year (one-third the middle term of three years) for the count 4 robbery conviction; plus (5) a consecutive term of three years four months (one-third the middle term of 10 years) for the count 4 personal-use-of-a-firearm enhancement (§ 12022.53(b)).

Counsel has filed a brief asking this court to review the record for error as mandated by *People v. Wende* (1979) 25 Cal.3d 436. We affirm the judgment.

FACTUAL BACKGROUND

A. *The People's Case*

On October 15, 2012, at around 1:30 a.m., Pantoja entered a CVS store on Third Avenue in Chula Vista. He asked cashier Rocio Pale for cigarettes. When Pale retrieved

the cigarettes, Pantoja told her to hand over the money in her register. Pale initially thought that he was playing around with her, but Pantjoa then told her that someone would get hurt if she did not put the money in a plastic bag. Pantoja lifted his shirt and Pale saw that he a gun in his right pocket. Pale was terrified, took the money from her register and placed it in a plastic bag.

After he took the money, Pantoja approached Fred Fargo, a customer in the store who was 73 years of age, and said to him, "Give me your car keys." When Fargo replied, "What?" Pantoja pulled the gun from his pocket. Fargo became scared and gave his car keys to Pantoja, who left the store but stood near the corner outside.

Both Pale and Fargo called 911. Police officers from the Chula Vista Police Department responded to the call several minutes later. Officer Raul Naranjo drove to the store while other officers set up a perimeter nearby. When he reached the intersection of Fourth Avenue and C Street, the officer saw a man (Pantoja) waving his arms in the air. Believing the man was a victim who was flagging him down for assistance, Officer Naranjo approached the man in his patrol car. When the officer pulled within 30 to 35 yards of his location, Pantoja took two or three steps forward, pulled a gun out, and fired three shots in the officer's direction.

Officer Naranjo ducked and radioed that he was under fire. He watched as Pantoja walked across Fourth Avenue. As the officer took cover behind his patrol car and loaded his rifle, Pantoja turned around and walked back towards his original position outside the CVS store. Although Pantoja did not fire any more shots, he repeatedly raised his gun and pointed it at Officer Naranjo.

4

Fearing that Pantoja would fire another shot at him, Officer Naranjo fired his rifle three times at Pantoja. The first two shots missed, but the third hit Pantoja's leg and brought him down.

A semiautomatic pistol was recovered near Pantoja's feet, and the chamber and magazine were empty. Four expended cartridges and one live round from that pistol were recovered on the street near the CVS store. Fargo's car keys were found in the CVS parking lot.

Paramedics transported Pantoja to the hospital, where he was subsequently interviewed by the police. After indicating he understood his *Miranda*[2] rights, Pantoja said he did not remember the incident. He later admitted that he robbed Pale, but maintained that he could not recall taking Fargo's keys or shooting at Officer Naranjo. He explained that he had been using methamphetamine, he was drunk, and he was not in his "right state of mind."

B. *The Defense*

Pantoja presented a defense of suicide by cop. Nicole Friedman, a psychologist, explained that suicide by cop refers to "when a person engages in the apparent risk of harm . . . to . . . another person as a component of their own desire, to have the police use deadly force against them." She testified that, according to a study, common factors associated with this behavior include not fleeing the scene when an escape route is available, the lack of a suicide note, feelings of hopelessness, drug use, and

---

[2]     *Miranda v. Arizona* (1966) 384 U.S. 436.

aggressiveness towards an officer. The study also indicated that a majority of individuals involved in a suicide by cop scenario had possessed a handgun, while about 50 percent had discharged such weapon.

## DISCUSSION

Appointed appellate counsel has filed a brief summarizing the proceedings below. Counsel presents no argument for reversal, but asks this court to review the record for error as mandated by *People v. Wende*, *supra*, 25 Cal.3d 436. Pursuant to *Anders v. California* (1967) 386 U. S. 738, counsel refers to the following as possible, but not arguable, issues: (1) Is the evidence sufficient to support Pantoja's count 4 robbery conviction given the evidence showing he took the victim's (Fred Fargo's) car keys but abandoned them in the parking lot within minutes of the taking?; (2) Did the court properly recall Pantoja's sentence the day after sentencing when it imposed a greater sentence?; and (3) Did the count properly impose a personal-use-of-a-firearm enhancement on both robbery counts?

On June 25, 2014, we granted Pantoja permission to file a brief on his own behalf. He has not responded.

A review of the record pursuant to *People v. Wende*, *supra*, 25 Cal.3d 436, and *Anders v. California*, *supra*, 386 U.S. 738, including the possible issues raised by appellate counsel, has disclosed no reasonably arguable appellate issue. Pantoja has been represented adequately by appellate counsel.

6

DISPOSITION

The judgment is affirmed.

NARES, J.

WE CONCUR:

HUFFMAN, Acting P. J.

McDONALD, J.